UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   CASE NO: 8:17-cr-308-CEH-TGW

MANUEL ANTONIO SILVA

_____

**ORDER**

This cause comes before the Court on Defendant Manuel Antonio Silva's Motion for Compassionate Release (Doc. 142). Proceeding *pro se*, Silva requests compassionate release under 18 U.S.C. § 3582(c)(1)(A) because of COVID-19 and the danger it poses to him in his prison facility due to his underlying health conditions. The Government opposes Silva's motion (Doc. 144).

Upon review and consideration, and being fully advised in the premises, the Court will deny the motion.

**I.   BACKGROUND**

On July 8, 2020,[1] Silva was sentenced to 138 months' incarceration upon his guilty plea to one count of attempted possession with intent to distribute 500 grams or more of cocaine and one count of possession of a firearm in furtherance of a drug

---

[1] On April 27, 2018 the Court sentenced Silva to 138 months' incarceration. This judgment reflected in Doc. 113 was subsequently vacated after the Court granted Silva's motion to vacate his sentence under 28 U.S.C. § 2255. *See* Docs. 126, 128. Silva was resentenced on July 8, 2020, to the same terms and conditions of imprisonment and release as set forth in his original judgment. *Id.*

trafficking crime, based on conduct committed on or about June 7, 2017. Doc. 129. Now 52 years old, Silva is incarcerated at FCI Coleman Low.

Silva now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Doc. 142. He argues that extraordinary and compelling reasons exist due to the COVID-19 pandemic, to which his vulnerability is twofold. *Id.* at 6. First, Silva contends that there is a higher risk of contracting the virus in Atlanta Federal Prison Camp, where he was incarcerated at the time he filed the Motion,[2] as evidenced by the 107 total cases in the prison and the death of a case manager. *Id.* at 20–21. Second, Silva contends that he is more vulnerable to the Delta, Alpha, and Beta coronavirus variants because of his underlying medical conditions—obesity, high blood pressure, and high cholesterol—which put him at a higher risk of complications if he contracts the virus. *Id.* at 6.

Silva also argues that he does not present a risk to the community if released, which he asserts is shown through the documents attached to his motion (Doc. 142). Silva's evidence includes: a Proposed Release Plan, a letter of recommendation from his work supervisor, a Risk Item Scoring Chart, a Program Review of his Individualized Needs Plan, a transcript of his Inmate Education Data, and a confirmation of completion of a Drug Education Program. *Id.* at 12–19. He contends that these documents demonstrate that he is at a low risk of reoffending. *Id.* at 7.

---

[2] The Bureau of Prisons' website indicates that Silva is no longer incarcerated in the Atlanta Federal Prison Camp, but instead is located at FCI Coleman Low.

Responding in opposition, the Government argues that the Court should deny Silva's motion for compassionate release because Silva does not demonstrate any extraordinary or compelling medical conditions that satisfy the requirements for compassionate release. Doc. 144 at 1. The Government further asserts that COVID-19 is not an extraordinary and compelling reason to grant compassionate release under 18 U.S.C. § 3582(c)(1)(A). *Id.* at 9. Additionally, it argues that Silva would pose a danger to public safety if released. *Id.* at 13. It contends that the Bureau of Prisons ("BOP") balances concern for the health of its inmates and staff amid the COVID-19 crisis with safety concerns for the public by keeping sentenced criminals incarcerated. *Id.* at 5. Finally, the Government observes that Silva has refused to receive the COVID-19 vaccine. *See* Doc. 144-1.

## II.   LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c). Effective December 21, 2018, section 603 of the First Step Act of 2018 amended section 3582(c)(1)(A) by adding a provision that allows incarcerated individuals to directly petition a district court for compassionate release. That provision states:

> The court may not modify a term of imprisonment once it has been imposed except that—

> (1) in any case—
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>
>>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>>
>>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>>
>> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. . . .

18 U.S.C. § 3582(c)(1) (italics reflecting amendment under First Step Act). Courts are to consider the factors listed in 18 U.S.C. § 3553(a), as applicable, as part of the analysis.[3] *See* § 3582(c)(1)(A).

---

[3] These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes

4

## III. DISCUSSION

As a threshold matter, the Court finds that Silva has adequately exhausted his administrative remedies. Under 18 U.S.C. § 3582(c)(1), a defendant must exhaust administrative remedies with the Bureau of Prisons prior to filing a Motion for compassionate release. "Section 3582(c)(1)(A) unambiguously provides that a defendant may either move for compassionate release after the defendant has fully exhausted administrative remedies *or* 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Smith*, 482 F. Supp. 3d 1218, 1223 (M.D. Fla. 2020) (emphasis in original) (quoting 18 U.S.C. § 3582(c)(1)(A)). Silva provided documentation of a request for compassionate release submitted to the warden of the Atlanta Federal Prison Camp on January 1, 2021. Doc. 142 at 4. He reported no response from the warden at the time he filed the instant motion—February 8, 2021—which was over thirty days after he submitted the request. *Id.* at 3. The Government does not challenge that Silva exhausted his administrative remedies before filing a motion for compassionate release. The Court finds that Silva has satisfied the exhaustion requirement.

---

of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

However, Silva has not established an extraordinary and compelling reason that warrants compassionate release. Under *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013), a defendant must establish that a sentence reduction is warranted. Specifically, under 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act, a defendant must show (1) that he is 70 years old and has served at least 30 years of incarceration and meets other enumerated criteria; or (2) that he has an extraordinary and compelling reason for compassionate release. The Eleventh Circuit has held that "extraordinary and compelling reasons" that permit the grant of compassionate release are exclusively defined by the policy statement of the United States Sentencing Commission contained in U.S.S.G. § 1B1.13, cmt. n.1. *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021). Such reasons are: the defendant's medical condition, his age, his family circumstances, or another reason that is determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13, cmt. n.1. This list of reasons is exhaustive. *Bryant*, 996 F.3d at 1265-66.

Here, Silva is 52 years old and was not sentenced until 2018 or 2020.[4] Thus, he does not qualify for compassionate release under the first provision of 18 U.S.C. § 3582(c)(1)(A) and must instead demonstrate an extraordinary and compelling reason that satisfies § 3582(c)(1)(A)(2). Silva argues that the Delta, Alpha, and Beta coronavirus variants as well as his underlying health conditions constitute such a reason. Doc. 142 at 6.

---

[4] See n.1, *supra*. Silva does not qualify for compassionate release under the first provision of 18 U.S.C. § 3582(c)(1)(A) under either judgment date.

6

Under the policy statement at U.S.S.G. § 1B1.13, cmt. n.1(A), an incarcerated individual's medical condition may provide an extraordinary and compelling reason to support a reduction in sentence when he is: (1) suffering from a terminal illness, *i.e.*, a serious and advanced illness with an end of life trajectory; or (2) suffering from a serious physical or medical condition that substantially diminishes his ability to care for himself within the prison environment and from which he is not expected to recover. U.S.S.G. § 1B1.13, cmt. n. 1(A).

Silva identifies high blood pressure and high cholesterol as relevant medical conditions that qualify him for compassionate release. Doc. 142 at 6. He does not provide any medical records to document his medical conditions. However, he has provided copies of medication labels for Aspirin, Hydrochlorothiazide, Lisinopril, and Atorvastatin. *Id.* at 10. The latter two labels specify that the medications are used for controlling blood pressure and high cholesterol, respectively. *Id.* Thus, Silva has adequately documented the existence of his medical conditions. *Cf. United States v. Heromin,* 8:11-cr-550, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (Covington, J.) (denying motion for compassionate release due to lack of corroboration from medical provider).

Nonetheless, although the records support Silva's assertion that he suffers from medical conditions to the extent that he requires medication (Doc. 142 at 6), they do not demonstrate that the conditions substantially diminish his ability to care for himself within the prison environment. Rather, it seems the BOP can provide the necessary medical treatment, and there is no indication that Silva cannot provide self-

7

care while in prison. *Id.* at 9–10. *See United States v. Martin*, No. 8:10-cr-305-VMC-AEP, 2020 WL 5369083, at *2 (M.D. Fla. Sept. 8, 2020) (denying motion for compassionate release because petitioner's high blood pressure is adequately controlled by medication provided by the BOP and there is no indication that he is unable to provide self-care while in prison).

Silva cites several out-of-circuit cases that found hypertension, coupled with other conditions unrelated to Silva's medical conditions, to be extraordinary and compelling circumstances that qualify a petitioner for compassionate release. *United States v. Anderson*, No. 14-cr-186, 2020 WL 5982896, at *8 (E.D. Wis. Oct. 8, 2020) (granting motion for compassionate release because petitioner's multiple health issues increase his risk of effects from COVID-19, including hypertension, type 2 diabetes, sleep apnea, cardiac arrhythmia, obesity, and heart disease); *United States v. Burke*, No. 4:17-cr-30846, 2020 WL 3000330, at *2 (D. Neb., June 4, 2020) (granting motion for compassionate release due to the short time left in the sentence, the risks of COVID-19, and medical conditions including a brain injury, tuberculosis, and hypertension). In both cases, the petitioner suffered from medical conditions beyond—or in addition to—hypertension and high blood pressure. *Anderson*, 2020 WL 5982896, at *8; *Burke*, 2020 WL 3000330, at *2. These cases are distinguishable from Silva's situation, because those petitioners' conditions are both more serious and more numerous than Silva's.

On the other hand, courts in the Middle District of Florida have found that high blood pressure and high cholesterol are not extraordinary or compelling conditions.

8

*See United States v. Jones*, No: 3:17-cr-220-MMH-JBT, 2020 WL 7229751, at *1 (M.D. Fla December 8, 2020); *United States v. Jackson*, No: 3:16-cr-104-TJC-MCR, 2020 WL 3962275, at *1 (M.D. Fla. July 13, 2020). In *Jones*, for example, the court reasoned that high blood pressure is so common that "roughly half the prison population would be eligible for compassionate release" if it were found to constitute an extraordinary and compelling reason. 2020 WL 7229751, at *1 (citing *United States v. Hayes*, No: 3:18-cr-37-MMH-JBT, 2020 WL 3611485, at *2 (M.D. Fla. July 2, 2020)); *see also Jackson*, No: 3:16-cr-104-TJC-MCR, at *1 (citing a Centers for Disease statistic that "108 million adults in the United States (nearly 45%) have high blood pressure or take medication for the condition"; holding that neither high blood pressure nor high cholesterol are extraordinary conditions warranting compassionate release). The *Jones* court found that the petitioner's high blood pressure alone did not rise to the level of an extraordinary and compelling reason for compassionate release . . . *Jones*, 2020 WL 7229751, at *1.

To the extent that Silva's cited cases rely on COVID-19 as a factor for compassionate release, they differ from binding Eleventh Circuit precedent. The Eleventh Circuit has held that the COVID-19 pandemic does not permit a district court to deviate from the policy statement's requirements even where an incarcerated individual's medical conditions put him at particular risk of serious consequences from contracting COVID-19. *See United States v. Giron*, 15 F.4th 1343, 1346-47 (11th Cir. 2021) (the confluence of defendant's medical conditions and the COVID-19 pandemic did not create an extraordinary and compelling reason for compassionate release); *see*

9

*also, e.g.*, *United States v. Willhite*, No. 21-10441, 2022 WL 424817, *1-2 (11th Cir. Feb. 11, 2022) (same); *United States v. Pearson*, No. 21-10750, 2021 WL 4987940, *1-2 (11th Cir. Oct. 27, 2021) (same).

Accordingly, Silva also cannot meet his burden of establishing an extraordinary and compelling reason through his medical conditions, or the combination of those conditions and the COVID-19 pandemic.

Additionally, the Government notes that Silva was offered the COVID-19 vaccine by the BOP and refused it. Doc. 144-1. Silva's voluntary refusal of the COVID-19 vaccine undermines the premise of his motion. *See United States v. Kurbatov*, No. 18-cr-20172, 2021 WL 1923289, at *3 (S.D. Fla. May 13, 2021) ("Courts across the country are consistently holding that an inmate's refusal to get a COVID-19 vaccination negates a claim that the inmate's risk of serious illness from COVID-19 is an extraordinary and compelling reason for early release); *United States v. Holman*, No. 3:18-cr-43-MMH-JBT, 2021 WL 1193380, at *1 (M.D. Fla. Mar. 30, 2021) (finding no compelling and extraordinary reasons warranting compassionate release where defendant was offered, but refused, the Moderna COVID-19 vaccine).

Silva also argues that he is at particular risk because of the conditions at his prison facility. Doc. 142 at 6. However, the Court observes that he has since been transferred to a different facility, *see* n.2, rendering the argument moot. In any event, as described *supra*, the Eleventh Circuit has made clear that the risk of contracting COVID-19 does not constitute an extraordinary and compelling reason that merits

compassionate release. *Giron*, 15 F.4th at 1346-47; *Willhite*, No. 21-10441, at *1-2; *Pearson*, No. 21-10750, at *1-2.

In all, the evidence does not demonstrate that Silva's medical conditions rise to the severe level contemplated by the policy statement. With or without the COVID-19 pandemic, his conditions do not constitute an extraordinary and compelling reason for compassionate release. His motion for compassionate release must be denied.[5]

Accordingly, it is **ORDERED**:

1. Defendant Manuel Antonio Silva's Motion for Compassionate Release (Doc 142) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on July 18, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[5] Because the Court has determined that Silva is not eligible for a sentence reduction based upon its finding that no extraordinary or compelling reason exists, it need not analyze the factors listed in 18 U.S.C. § 3553(a). *See* Doc. 268 at 13-14. However, the Court recognizes Silva's diligent work in completing the drug education program and his efforts to earn his GED. The Court also recognizes Silva's mentorship of peers and the positive reviews from both his work supervisor and the educators in the GED program.